UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTATE OF DAVID MANCUSO, by and through its duly appointed Administrator, RICHARD D. HORSTMAN II,

Plaintiff,

v.

THE LOFT PARTY NYC, LLC, a New York limited liability company, and DOUGLAS SHERMAN, an individual,

Defendants.

CASE NO. 25-CV-5537

**COMPLAINT**

**Demand for Jury Trial**

Plaintiff the Estate of David Mancuso ("Plaintiff" or the "Estate"), by and through its duly appointed Administrator, Richard D. Horstman II ("Horstman"), by its attorneys, Mitchell Silberberg & Knupp LLP, complains and alleges against defendants Douglas Sherman ("Sherman") and The Loft Party NYC LLC (together with Sherman, "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' deliberate and wrongful appropriation and commercial exploitation of two iconic trademarks—LOVE SAVES THE DAY and THE LOFT (the "Marks")—which are exclusively owned by the Estate of the late David Mancuso (the "Estate"). Mancuso originated these trademarks in 1970 through his legendary, invitation-only music events, held consistently in New York City (in particular, in Manhattan) and branded prominently as "Love Saves the Day" and "The Loft." For nearly fifty years, Mancuso continuously used these marks in connection with his carefully curated dance events, creating substantial goodwill and widespread recognition in these trademarks, particularly within New York City's music and cultural communities. Mancuso's Loft events became widely celebrated

and recognized, admired particularly for their inclusive atmosphere, meticulous selection of music, and exceptional quality and purity of sound.

2. Upon Mancuso's death in 2016, all rights, title, and interest in the trademarks, including the Marks, along with all related goodwill, passed automatically by operation of law to his Estate. Since then, the Estate has diligently protected and preserved these trademarks and the related intellectual property to honor Mancuso's enduring legacy.

3. Following Mancuso's passing, Defendants initially continued to host THE LOFT-branded events using the Estate's trademarks under an explicitly revocable license granted by, and in conjunction with, the Estate. That cooperative arrangement dramatically changed in September 2022, when Defendants secretly withdrew approximately $17,770 from bank accounts controlled by the Estate-backed entity (The Loft Party, LLC), and covertly established their own competing entity, The Loft Party NYC LLC. Upon discovering Defendants' misconduct, the Estate promptly revoked all permissions and explicitly demanded that Defendants cease their unauthorized activities and return Estate-owned property, including specialized audio equipment and records historically associated with Mancuso's "The Loft" events. Defendants explicitly refused the Estate's demands, retaining Estate property without authorization, and have defiantly continued to operate unlawfully under the Estate's trademarks, including the Marks.

4. Defendants' bad-faith conduct escalated further on March 31, 2023, when Defendant The Loft Party NYC LLC surreptitiously filed a fraudulent trademark application (Serial No. 97/867,862) with the U.S. Patent and Trademark Office ("USPTO") to federally register the mark LOVE SAVES THE DAY. Defendants knowingly and falsely represented exclusive rights and a first-use date of 1970—directly appropriating Mancuso's historical use of

the mark LOVE SAVES THE DAY. Immediately upon learning of this fraudulent filing, the Estate timely filed an opposition proceeding (TTAB Opposition No. 91290708) before the USPTO's Trademark Trial and Appeal Board ("TTAB"), asserting claims of likelihood of confusion and fraud. The TTAB proceeding remains pending, reflecting the Estate's continued vigilance in protecting its trademarks.

5. Now, Defendants' misconduct has reached new heights. Claiming that their entitlement to use the Marks is due to the fact that they are "fans" of The Loft, Defendants are actively promoting an unauthorized and widely publicized event scheduled for July 19, 2025, titled "Love Saves the Day: Tribute to David Mancuso" (the "Infringing Event"), at Brooklyn Bridge Park. Promotional materials explicitly—and falsely—claim the Infringing Event is "in collaboration with the team behind David Mancuso's Loft Party," deceptively suggesting affiliation with and endorsement by the Estate. Defendants' unauthorized trademark use, false association, and misleading advertising have already caused consumer confusion and threaten irreparable damage to the Estate's trademarks, reputation, and the legacy Mancuso carefully cultivated throughout his life.

6. In response, the Estate brings this action asserting claims for federal trademark infringement, false designation of origin, deceptive acts and practices, unfair competition under federal and New York common law, and conversion and replevin under New York common law. The Estate seeks injunctive relief to halt Defendants' unlawful and deceptive conduct, as well as monetary damages, punitive damages, restitution, return of Estate property, and attorneys' fees and costs. Through this action, the Estate seeks to protect David Mancuso's carefully built legacy and intellectual property from ongoing harm and to hold Defendants accountable for their willful, deliberate, and egregious misconduct.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under federal trademark law, specifically the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. The Court has supplemental jurisdiction over Plaintiff's related state law and common law claims pursuant to 28 U.S.C. § 1367(a), as these claims form part of the same case or controversy.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred within this District. Specifically, David Mancuso developed, established, and continuously used the trademarks LOVE SAVES THE DAY and THE LOFT in connection with exclusive events held regularly and prominently in Manhattan, located within the Southern District of New York. Moreover, Defendants' unauthorized and infringing use of these trademarks, as well as the resulting confusion and harm to Plaintiff's goodwill, have occurred and continue to occur primarily in this District.

**PARTIES**

9. Plaintiff is the Estate of David Mancuso, by and through its duly appointed Administrator, Richard D. Horstman II. Horstman was initially appointed as Voluntary Administrator of the Estate on December 5, 2016. Subsequently, on April 1, 2024, Horstman was formally appointed Administrator of the Estate by the Surrogate's Court of New York County (File No. 2016-4379/A). As Administrator, Horstman has full and exclusive authority to manage, administer, and enforce all rights, claims, and interests of the Estate.

10. Upon information and belief, Defendant The Loft Party NYC, LLC is a limited liability company duly organized and existing under the laws of the State of New York, with its principal place of business located in Jamaica, Queens, New York.

11. Upon information and belief, Defendant Douglas Sherman is an individual residing in Queens County, New York, and is the principal, managing member, and controlling person of Defendant The Loft Party NYC, LLC.

## FACTUAL BACKGROUND

### A. David Mancuso's Legendary Loft Events and Origin of the Marks

12. On February 14, 1970, David Mancuso hosted a groundbreaking private event called "Love Saves the Day" at his home at 647 Broadway in Manhattan. This revolutionary gathering was the inaugural event in what became a celebrated series of exclusive, invitation-only parties known as "The Loft." Mancuso's events quickly became renowned throughout New York City for their unique, inclusive atmosphere, meticulous attention to musical selection, and unwavering commitment to creating a distinctive audiophile listening experience.

13. Over the next five decades, Mancuso continuously and exclusively used the Marks in connection with his private dance events. Through Mancuso's extensive, consistent, and exclusive use, these Marks gained substantial secondary meaning and widespread public recognition, particularly within New York City's music, nightlife, and cultural communities, becoming synonymous with Mancuso's highly distinctive approach to music and community gathering.

14. Mancuso passed away intestate on November 14, 2016. By operation of law, all rights, title, and interest in these common-law trademarks, including the associated goodwill and intellectual property, automatically vested in his Estate, administered by Horstman.

**B. Defendants' Authorized Activities and Subsequent Unauthorized Actions**

15. After Mancuso's passing, certain long-time collaborators—including Defendant Sherman—were permitted to organize events under a strictly revocable license granted by the Estate. This license allowed these individuals to use the Estate's trademarks and Estate-owned tangible assets, including specialized audio equipment.

16. In January 2019, these collaborators formed an entity called "The Loft Party, LLC" with the Estate's consent. At all relevant times, the Estate retained exclusive control over its trademarks and all related assets, and all parties were made aware that the Estate's physical assets were owned by the Estate and on loan as part of the parties' arrangement.

17. However, upon information and belief, without notice to or authorization from the Estate, on September 19, 2022, Sherman and others secretly formed a competing entity, Defendant The Loft Party NYC LLC, registered in Queens County, New York.

18. Upon information and belief, simultaneously on September 19 and 20, 2022, Defendants secretly and without authorization withdrew approximately $17,770 from the Loft Party LLC's bank accounts, funds exclusively generated from Estate-approved events. These unauthorized withdrawals enabled Defendants to finance their competing entity.

19. Immediately upon discovering these actions, the Estate revoked all permissions previously granted to Defendants, demanded Defendants cease unauthorized use of the Estate's trademarks, including the Marks, and demanded the immediate return of all Estate-owned assets, including custom audio equipment. Defendants openly refused these demands, wrongfully retained Estate property, and continued using the Estate's trademarks without permission.

**C. <u>Defendants' Fraudulent Federal Trademark Application and the Estate's TTAB Opposition</u>**

20. Upon information and belief, on March 31, 2023, Defendant The Loft Party NYC LLC filed a fraudulent trademark application (Serial No. 97/867,862) with the USPTO, seeking registration of the mark LOVE SAVES THE DAY. In doing so, Defendants falsely claimed exclusive ownership rights and falsely stated a first-use date of February 14, 1970—directly appropriating Mancuso's longstanding and well-known use of the LOVE SAVES THE DAY mark.

21. Upon information and belief, at the time of filing, Defendants knew the Estate held exclusive ownership of the Marks, previously acknowledged by Defendants themselves when operating under the Estate's revocable license.

22. Upon discovering Defendants' fraudulent application, the Estate timely filed an opposition proceeding (Opposition No. 91290708) before the TTAB on March 29, 2024, asserting claims of likelihood of confusion and fraud. The TTAB denied Defendants' motion to dismiss the Estate's opposition, and the proceeding remains active.

**D. <u>Defendants' Continued Trademark Infringement and Deceptive Advertising</u>**

23. Defendants continue to knowingly and intentionally use Plaintiff's trademarks without authorization. Among other things, Defendants are actively promoting a widely publicized event scheduled for July 19, 2025, titled "Love Saves the Day: Tribute to David Mancuso" at Brooklyn Bridge Park. Defendants' promotional materials falsely and explicitly claim collaboration "with the team behind David Mancuso's Loft Party," deliberately creating consumer confusion and suggesting affiliation with or endorsement by the Estate.

24. Upon information and belief, Defendants' misleading advertising and unauthorized trademark use have already resulted in actual consumer confusion and threaten

irreparable harm to the Estate's trademarks, goodwill, and Mancuso's meticulously cultivated legacy.

25. The Estate has consistently demanded that Defendants cease unauthorized activities. In September and October of 2022, the Estate explicitly demanded the immediate return of Estate-owned property and cessation of trademark infringement. Defendants explicitly rejected these demands and refused to comply. On June 12, 2025, upon discovering the unauthorized July 19, 2025 event, the Estate again demanded that Defendants immediately cease infringement and deceptive advertising. Defendants ignored these demands, continuing their infringing and deceptive conduct in bad faith.

26. Upon information and belief, Defendants' ongoing misconduct irreparably harms the Estate's trademarks, goodwill, and the integrity of Mancuso's legacy. Defendants' unauthorized conduct misleads the public and causes reputational harm.

27. Defendants' assertion of unauthorized claims to Plaintiff's Marks, as well as the Estate's property, has reached an intractable point. Accordingly, the Estate now seeks relief to conclusively confirm its exclusive rights and eliminate confusion regarding ownership of the Marks.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (False Designation of Origin and False Association (15 U.S.C. § 1125(a)))

28. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

29. Defendants' unauthorized use of Plaintiff's Marks in commerce falsely represents that their events and activities are affiliated with, endorsed, or sponsored by the Estate.

30. Defendants' promotional materials and public statements contain materially deceptive and false representations, including the assertion that Defendants' events are organized

"in collaboration with the team behind David Mancuso's Loft Party," deliberately misleading consumers regarding Plaintiff's endorsement or affiliation.

31. Upon information and belief, Defendants' false designations of origin and false associations violate 15 U.S.C. § 1125(a), causing Plaintiff irreparable injury.

32. Plaintiff is entitled to injunctive relief, corrective advertising, damages, disgorgement of profits, punitive damages, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**
**(Cancellation of U.S. Trademark Application No. 97/867,862**
**(15 U.S.C. §§ 1052(d) and 1119))**

33. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

34. Plaintiff's rights in the Marks predate any rights that may be asserted or relied upon by Defendant The Loft Party NYC, LLC, in connection with the mark LOVE SAVES THE DAY (the "Applied-for Mark") that is the subject of the application assigned Serial No. 97/867,862 (the "Application"). Plaintiff's predecessor commenced use in commerce of its family of the Marks and obtained the registrations therefor long before the filing date of the Application (*i.e.*, March 31, 2023).

35. The Applied-For Mark incorporates verbatim Plaintiff's mark LOVE SAVES THE DAY in its entirety and is therefore highly similar in appearance, sound, and commercial impression to Plaintiff's LOVE SAVES THE DAY Mark.

36. Plaintiff has not licensed, sponsored, or otherwise authorized Defendants to use and/or register Plaintiff's Marks or any mark confusingly similar thereto.

37. The Application identifies services identical to and directly competitive with services Plaintiff has offered under the Marks, and a first-use date that is knowingly fraudulent in light of the fact that The Loft Party NYC, LLC did not exist at that time and such entity is claiming the use and goodwill that belongs to Mr. Mancuso and now, the Estate.

38. The Applied-for Mark so resembles Plaintiff's LOVE SAVES THE DAY Mark as to be likely, when used in conjunction with the services identified in the Application, to cause confusion, cause mistake, or to deceive consumers into believing that the services that Defendant offers under the Applied-for Mark originate from and/or are endorsed, sponsored, or approved by or otherwise associated with Plaintiff, with consequent injury to Plaintiff and the consuming public.

39. The Applied-for Mark bears a sufficient nexus to the Marks for which Plaintiff owns rights via New York estate laws.

40. Accordingly, the Application should be ordered canceled, pursuant to 15 U.S.C. § 1119, based on a likelihood of confusion with Plaintiff's Marks, in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

**THIRD CAUSE OF ACTION**
**(Trademark Dilution (New York General Business Law § 360-l))**

41. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

42. Section 360-l of the New York General Business Law provides that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

43. Plaintiff is the exclusive owner of all rights, title, and interest in and to the Marks throughout the United States, including in the State of New York.

44. The Marks are distinctive within the meaning of Section 360-l of the New York General Business Law.

45. By its conduct described above, Defendants have likely injured Plaintiff's rights and/or diluted the distinctive quality of Plaintiff's Marks in violation of Section 360-l of the New York General Business Law.

46. Upon information and belief, Defendants intend to continue this conduct, and will continue to willfully injure Plaintiff's rights and/or dilute the distinctive quality of Plaintiff's Marks, unless restrained by this Court.

47. Defendants' acts have caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff, including to Plaintiff's public image, goodwill and reputation. Plaintiff has no adequate remedy at law and is thus entitled to an injunction, as well as damages as provided by law.

**FOURTH CAUSE OF ACTION**
**(Common Law Trademark Infringement and Unfair Competition)**

48. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

49. Defendants' unauthorized use of Plaintiff's Marks constitutes trademark infringement and unfair competition under New York common law.

50. Upon information and belief, Defendants' conduct has caused and continues to cause consumer confusion regarding the Estate's affiliation, endorsement, or sponsorship of Defendants' activities.

51. Plaintiff is entitled to injunctive relief, damages, disgorgement of profits, punitive damages, attorneys' fees, and costs.

**FIFTH CAUSE OF ACTION**
**(Conversion)**

52. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

53. In September 2022, Defendants unlawfully withdrew approximately $17,770 from The Loft Party, LLC's bank accounts without authorization or consent.

54. Defendants unlawfully took and retained Plaintiff's valuable personal property, including specialized audio equipment and records belonging exclusively to Plaintiff Estate.

55. Plaintiff repeatedly demanded return of this property, and Defendants explicitly refused.

56. Defendants' unauthorized exercise of control over Plaintiff's funds and tangible property constitutes conversion under New York common law.

57. Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees, and costs.

**SIXTH CAUSE OF ACTION**
**(Replevin)**

58. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

59. Plaintiff Estate holds a superior right to immediate possession of specific tangible personal property wrongfully detained by Defendants, including specialized audio equipment, records, and related items.

60. Plaintiff repeatedly demanded return of this property. Defendants refused these demands, wrongfully detaining Plaintiff's property.

61. Plaintiff is entitled to immediate recovery and return of its personal property pursuant to CPLR Article 71 and common law replevin principles.

62. Plaintiff seeks judgment directing immediate return of Plaintiff's property, or alternatively, monetary damages equal to the full value thereof.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable of right pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1. Enter judgment in Plaintiff's favor on all causes of action;
2. Permanently enjoin Defendants, including their officers, directors, agents, employees, representatives, affiliates, and all persons acting in concert with them, from any unauthorized use of Plaintiff's trademarks, including the Marks LOVE SAVES THE DAY and THE LOFT, or any confusingly similar marks;
3. Order Defendants to immediately return all tangible personal property belonging to Plaintiff, including specialized audio equipment, records, and related items, or award monetary damages equal to the full replacement value of such property if return is not feasible;
4. Award Plaintiff compensatory damages resulting from Defendants' unlawful conduct, in amounts to be determined at trial;
5. Order Defendants to disgorge all profits realized through unauthorized use of Plaintiff's trademarks and property;
6. Award punitive and exemplary damages due to Defendants' deliberate, willful, and malicious misconduct;
7. Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action pursuant to 15 U.S.C. § 1117(a), applicable New York law, and the Court's equitable powers;

8. Award Plaintiff pre- and post-judgment interest as permitted by law; and

9. Award such further relief as the Court deems just and proper.

DATED: New York, New York  
July 3, 2025

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Eleanor M. Lackman  
Eleanor M. Lackman (eml@msk.com)  
Samantha W. Frankel (swf@msk.com)  
437 Madison Ave., 25th Floor  
New York, New York 10022-7001  
Telephone: (212) 509-3900  
Facsimile: (212) 509-7239

*Attorneys for Plaintiff Estate of David Mancuso, by its Administrator Richard D. Horstman II*