UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ESTATE OF DAVID MANCUSO, by and through its duly appointed Administrator, RICHARD D. HORSTMAN II,<br><br>          Plaintiff,<br><br>    v.<br><br>THE LOFT PARTY NYC, LLC, a New York limited liability company, and DOUGLAS SHERMAN, an individual,<br><br>          Defendants. | CASE NO. 1:25-cv-05537<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>(Oral Argument Requested) |

20850308.5

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.    STATEMENT OF FACTS ....................................................................................... 2

III.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION .......................................... 4

IV.    ARGUMENT ....................................................................................................... 4

    A.    The Court Should Preliminarily Enjoin Defendants from Using Plaintiff's Trademarks in Connection with Their Unauthorized Event ................................... 4

        1.    Plaintiff Has a Clear Likelihood of Success on the Merits ........................ 4

            a.    Plaintiff Has Standing and Valid Common-Law Trademark Rights. ...................................................................................... 4

            b.    Defendants' Unauthorized Use Creates a Strong Likelihood of Consumer Confusion. .................................................................. 6

        2.    Plaintiff Will Suffer Immediate and Irreparable Harm Without an Injunction .................................................................................... 7

        3.    The Balance of Hardships Tips Sharply in Plaintiff's Favor ...................... 8

        4.    Granting the Injunction Serves the Public Interest ................................... 8

    B.    The Court Should Preliminarily Enjoin Defendants from Selling, Transferring, or Using the Estate's Sound Equipment and Related Tangible Assets ......................................................................................................... 8

        1.    Plaintiff is Likely to Succeed on the Merits of its Conversion Claim ........ 9

        2.    Plaintiff Faces Immediate and Irreparable Harm Without Injunctive Relief ......................................................................................... 9

        3.    The Balance of Hardships Favors Plaintiff ........................................... 10

        4.    Granting the Injunction Serves the Public Interest ................................. 11

    C.    Plaintiff Should Not Be Required to Post a Bond................................................. 11

CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AVELA, Inc. v. Estate of Marilyn Monroe, LLC*,
  364 F. Supp. 3d 291 (S.D.N.Y. 2019)................................................................................5

*Chandon Champagne Corp. v. San Marino Wine Corp.*,
  335 F.2d 531 (2d Cir. 1964)...............................................................................................6

*Colavito v. New York Organ Donor Network, Inc.*,
  8 N.Y.3d 43 (2006) ............................................................................................................9

*Commodores Entm't Corp. v. McClary*,
  879 F.3d 1114 (11th Cir. 2018) .........................................................................................6

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996)...............................................................................................11

*Ferrer v. Maychick*,
  69 F. Supp. 2d 495 (S.D.N.Y. 1999)..................................................................................5

*Kozar v. Christie's, Inc.*,
  31 Misc. 3d 1228(A), 929 N.Y.S.2d 200 (Sup. Ct. Westchester Cnty. 2011) .........................10

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010)........................................................................4, 8, 11

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961)...............................................................................................6

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*,
  144 F. Supp. 2d 241 (S.D.N.Y. 2001)............................................................................9, 11

*Ryan v. Volpone Stamp Co., Inc.*,
  107 F. Supp. 2d 369 (S.D.N.Y. 2000)..............................................................................6, 7

*Semmes Motors, Inc. v. Ford Motor Co.*,
  429 F.2d 1197 (2d Cir. 1970)............................................................................................10

*Stern Apparel Corp. v. Raingard, Inc.*,
  87 F. Supp. 621 (S.D.N.Y. 1949) .......................................................................................6

*Styleline Studios Int'l Ltd. v. Litvack*,
  2024 WL 3849484 (E.D.N.Y. Aug. 16, 2024).....................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tecnimed SRL v. Kidz-Med, Inc.*,
    763 F. Supp. 2d 395 (S.D.N.Y. 2011)......................................................................8

*Teleflex Inc. v. Telerad Mfg. Corp.*,
    1960 WL 8007 (S.D.N.Y. Sept. 12, 1960)................................................................5

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837 (2006), and
    *certified question answered*, 8 N.Y.3d 283 (2007).................................................9

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003).................................................................................4, 6

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................9

*Zesty Paws LLC v. Nutramax Lab'ys, Inc.*,
    2024 WL 2853622 (S.D.N.Y. June 4, 2024) ...........................................................4

**STATUTES**

15 U.S.C. § 1127.............................................................................................................5

15 U.S.C. § 1125(a) ........................................................................................................4

**RULES**

Fed. R. Civ. P. 65(c) .....................................................................................................11

iii

## I.    PRELIMINARY STATEMENT

The Estate of David Mancuso ("Plaintiff" or the "Estate"), acting through its duly appointed Administrator Richard D. Horstman II, urgently seeks this Court's intervention to stop Defendants The Loft Party NYC, LLC and Douglas Sherman (collectively, "Defendants") from staging an unauthorized and deceptive event titled "Love Saves the Day: Tribute to David Mancuso" scheduled for July 19, 2025, in Brooklyn Bridge Park.  Defendants—formerly trusted collaborators now turned opportunistic infringers—are brazenly hijacking Mr. Mancuso's iconic common law trademarks, LOVE SAVES THE DAY and THE LOFT (the "Marks"), which embody a legendary cultural legacy carefully nurtured by Mr. Mancuso for over half a century.

Since Mr. Mancuso first opened the doors to his groundbreaking, invitation-only Loft gatherings on Valentine's Day in 1970, the Marks LOVE SAVES THE DAY and THE LOFT have come to symbolize not just a musical event, but a cherished, carefully curated experience integral to New York City's cultural fabric.  Mr. Mancuso's passing in 2016 vested these Marks and their invaluable goodwill exclusively in his Estate.  Yet now, Defendants audaciously exploit these Marks without permission, actively deceiving the public into believing their commercial venture is officially endorsed by Mr. Mancuso's Estate.  Such deliberate and calculated infringement threatens immediate, irreparable harm, destroying decades of meticulous reputation management and cultural stewardship, sowing consumer confusion, and inflicting lasting damage upon Mr. Mancuso's singular legacy.

Immediate judicial action is crucial.  Allowing Defendants' unauthorized event to proceed will irreversibly tarnish Mr. Mancuso's iconic marks, mislead loyal patrons, and embolden further infringement.  The Estate respectfully asks this Court to issue a preliminary injunction to halt this admitted misuse of Mr. Mancuso's intellectual property, so that the Estate may preserve the integrity of Mr. Mancuso's irreplaceable legacy and safeguard public trust.

20850308.5

## II.    STATEMENT OF FACTS

The underlying facts are set forth in detail in Paragraphs 1 through 28 of the Complaint and the accompanying Declaration of Richard D. Horstman II dated July 3, 2025 ("Horstman Decl."), and Declaration of Samantha Frankel dated July 3, 2025 ("Frankel Decl.").  The key factual allegations relevant to this motion are summarized as follows:

David Mancuso transformed New York City's cultural landscape with his legendary "Loft" events, beginning with the iconic "Love Saves the Day" gathering on February 14, 1970. *See* Horstman Decl. ¶ 3.  These exclusive, invitation-only parties rapidly became revered cultural landmarks, renowned globally for Mr. Mancuso's innovative vision, superior audiophile-quality sound systems, and inclusive community ethos.  *See id*. ¶¶ 3, 8.  Over nearly five decades, Mr. Mancuso's unwavering dedication and creative genius solidified the trademarks LOVE SAVES THE DAY and THE LOFT as unmistakable symbols of authenticity, musical excellence, and community spirit.  *See id*.

Following Mr. Mancuso's passing in 2016, all intellectual and physical property—including the famed Loft sound equipment and associated trademarks—passed to his Estate by operation of law.  After careful and thorough proceedings, the New York County Surrogate's Court officially appointed Richard D. Horstman II as Administrator in April 2024 (*see* Horstman Decl. ¶ 2 & Ex. 1), formally entrusting him with protecting Mr. Mancuso's profound legacy.

Initially, the Estate endeavored to honor Mr. Mancuso's vision by collaborating in good faith with long-time Loft associates—including Defendant Douglas Sherman—to continue authentic, Estate-approved events under a revocable license.  *See id*. ¶¶ 4-5.  However, in a stunning betrayal in September 2022, Sherman and others broke away, forming Defendant The Loft Party NYC, LLC without the Estate's consent.  *See id*. ¶ 6.  Defendants then deliberately converted Estate property, refused to return Mr. Mancuso's irreplaceable custom audio

2

equipment, and illicitly drained funds generated from Estate-sanctioned events. *See id*. ¶¶ 6-8. Worse, they declared themselves the inheritors and arbiters of Mr. Mancuso's legacy, arrogantly dismissing the Estate's demands for compliance. *See id*. ¶ 10.

Defendants' unauthorized July 19, 2025 event (*see* Horstman Decl., Ex. 4 (printout of event details for "Love Saves the Day Tribute to David Mancuso")) epitomizes this continuing pattern of flagrant infringement and usurpation of the Estate's valuable rights. Moreover, their marketing explicitly and falsely claims collaboration with the "team behind David Mancuso's Loft Party," and brazenly misuses Mr. Mancuso's protected Marks LOVE SAVES THE DAY and THE LOFT. *See id.* Defendants' marketing exploits the Marks' unique goodwill to attract attendees under the false pretense of Estate endorsement, damaging Mr. Mancuso's legacy and deceiving the public.

On June 12, 2025, the Estate sent Defendants a formal cease-and-desist notice demanding immediate cessation of all infringing activities. *See* Frankel Decl. ¶ 2 & Ex. 1. Defendants have ignored this letter. *See id.* ¶ 2. Meanwhile, Defendants persist in publicly associating their unauthorized event with Mr. Mancuso's iconic trademarks, deliberately misleading consumers, falsely suggesting Estate endorsement, and irreparably harming the goodwill carefully cultivated by Mr. Mancuso over decades.

Each day Defendants remain unchecked, the Estate suffers incalculable harm. Defendants' actions represent far more than infringement; they are an existential threat to Mr. Mancuso's vision and the cultural authenticity he painstakingly built, and which he did not grant to Defendants for purposes of exploitation or otherwise. Immediate judicial relief is not merely warranted but essential to halt this irreparable injury. Only a swift preliminary injunction from

3

20850308.5

this Court can safeguard Mr. Mancuso's celebrated trademarks, protect the public from continued deception, and preserve an extraordinary cultural legacy from exploitation and harm.

## III.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction in a trademark infringement action, a plaintiff must establish: (1) a likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) the balance of hardships tipping decidedly in its favor; and (4) that the public interest favors granting an injunction. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010). "The moving party need only show likelihood of success on the merits of at least one claim to warrant preliminary injunctive relief." *Zesty Paws LLC v. Nutramax Lab'ys, Inc.*, 2024 WL 2853622, at *2 (S.D.N.Y. June 4, 2024).

## IV.    ARGUMENT

### A.    <u>The Court Should Preliminarily Enjoin Defendants from Using Plaintiff's Trademarks in Connection with Their Unauthorized Event</u>

#### 1.    Plaintiff Has a Clear Likelihood of Success on the Merits

##### a.    Plaintiff Has Standing and Valid Common-Law Trademark Rights.

To succeed on a trademark infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, a plaintiff must establish (1) ownership of a valid, protectable trademark and (2) likelihood of confusion caused by defendants' unauthorized use. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Common-law trademark rights accrue through continuous and exclusive use of a mark in commerce, creating strong secondary meaning and public recognition. *See New York City Triathlon, LLC*, 704 F. Supp. 2d at 328-29.

The Estate clearly possesses protectable common-law trademark rights in the Marks LOVE SAVES THE DAY and THE LOFT, based on more than five decades of continuous and exclusive use in connection with David Mancuso's legendary music-centered events in

4

Manhattan.  *See* Horstman Decl. ¶ 3.  These marks became synonymous with Mr. Mancuso's distinctive style, philosophy, and musical gatherings, thereby developing strong secondary meaning and public recognition—including the very type of public recognition that Defendants have expressly indicated they will usurp via their upcoming event on July 19, 2025.  *See id.*

Upon Mr. Mancuso's death in 2016, the Estate succeeded to all rights and goodwill associated with these trademarks.  *See id.* ¶¶ 2, 4.  The Estate has actively protected and enforced these rights, including opposing Defendant Sherman's trademark application for LOVE SAVES THE DAY.  *See id.* ¶ 12; *see also* Complaint, ¶¶ 20-22.[1]

Federal courts in this District consistently recognize estates' standing to enforce trademarks embodying a deceased individual's reputation, legacy, or persona, even absent explicit testamentary language.  *See, e.g.*, *Ferrer v. Maychick*, 69 F. Supp. 2d 495, 498 (S.D.N.Y. 1999) (holding Audrey Hepburn's estate had standing under the Lanham Act to protect rights in her persona); *AVELA, Inc. v. Estate of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 307-08 (S.D.N.Y. 2019) (holding successor-in-interest estates have enforceable trademark rights in a deceased celebrity's persona).

Accordingly, Plaintiff has clearly demonstrated both standing to sue, and valid, protectable common-law trademark rights in LOVE SAVES THE DAY and THE LOFT that have become a valuable part of the Estate's assets.[2]

---

[1] In denying Defendants' motion to dismiss, the TTAB expressly recognized the allegations that the Estate "has pleaded facts that, if proven, would establish Opposer's entitlement to a statutory cause of action."  Opp. No. 91290708, 12 TTABVUE at 3-4.

[2] Plaintiff anticipates that Defendants may assert an abandonment defense based on purported nonuse since Mr. Mancuso's death.  Any such argument would not only be untrue, it would fail as a matter of law.  Abandonment requires both nonuse and an intent not to resume use.  *See* 15 U.S.C. § 1127; *Teleflex Inc. v. Telerad Mfg. Corp.*, 1960 WL 8007, at *12 (S.D.N.Y. Sept. 12, 1960).  As noted at Horstman Decl. ¶¶ 4-5, such Marks were used under license from the Estate,

5

### b.   Defendants' Unauthorized Use Creates a Strong Likelihood of Consumer Confusion.

To assess likelihood of confusion under the Lanham Act, courts in this Circuit apply the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These include mark strength, similarity of the marks, proximity of products, actual confusion, and defendants' intent.  *Id.*  A plaintiff need not demonstrate every factor; rather, courts consider these factors as a whole to assess likelihood of confusion.  *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003).

Here, Defendants are using identical marks (LOVE SAVES THE DAY and THE LOFT) to promote essentially an identical musical event in the same geographic market cultivated by David Mancuso and now protected by the Estate.  *See* Horstman Decl. ¶ 11 & Ex. 4.  Where identical marks are used for highly similar services, courts have repeatedly held confusion is not merely likely, but inevitable.  *See Virgin Enters.*, 335 F.3d at 149-51 (identical marks strongly indicate likely confusion); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 401 (S.D.N.Y. 2000) (prior licensee's continued unauthorized use after termination substantially increases likelihood of confusion).

Moreover, Defendants have explicitly promoted their event as being affiliated with "the team behind David Mancuso's Loft Party" (Horstman Decl., Ex. 4), deliberately misleading

---

with the goodwill inuring to the licensor's benefit as a matter of law.  Moreover, it is well established that temporary nonuse due to circumstances beyond a trademark owner's control, including the death of the trademark owner, estate administration proceedings, or unauthorized retention of essential property by third parties, does not constitute abandonment.  *See Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 535 (2d Cir. 1964); *Stern Apparel Corp. v. Raingard, Inc.*, 87 F. Supp. 621, 624 (S.D.N.Y. 1949).

Furthermore, if anything, it is Defendants who abandoned any rights they might have claimed when they voluntarily separated from the Estate-supported Loft organization.  *See, e.g.*, *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1132 (11th Cir. 2018) (former band member "left behind his common-law rights" in the group's trademarks when he departed).

6

consumers into believing Plaintiff endorses or sponsors the upcoming event. This intentional conduct significantly heightens the likelihood of confusion. *See Ryan*, 107 F. Supp. 2d at 401 (intentional, unauthorized post-license use creates heightened confusion).

Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits of its trademark infringement and unfair competition claims under the Lanham Act.

### 2. Plaintiff Will Suffer Immediate and Irreparable Harm Without an Injunction

"Under the Trademark Modernization Act of 2020, a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits." *Styleline Studios Int'l Ltd. v. Litvack*, 2024 WL 3849484, at *4 (E.D.N.Y. Aug. 16, 2024) (citations and internal quotation marks omitted). "Thus, if (1) the plaintiff establishes that it has a likelihood of success on the merits (that is, it establishes both the validity of its mark and a likelihood of confusion), and (2) the defendant fails to rebut the presumption, the plaintiff satisfies its burden of showing irreparable harm." *Id.* (citations and internal quotation marks omitted).

Here, Defendants' unauthorized use of the Estate's Marks clearly undermines Mr. Mancuso's carefully cultivated legacy and creates an immediate threat to the Estate's goodwill and public trust. Courts have consistently recognized that a prior licensee's continued unauthorized use of a trademark after termination of the license inherently constitutes irreparable harm due to inevitable consumer confusion and damage to the trademark owner's reputation. *See Ryan*, 107 F. Supp. 2d at 400-01 (granting preliminary injunction, finding irreparable harm from licensee's unauthorized post-termination use of trademark).

Because Defendants cannot rebut this presumption of irreparable harm, preliminary injunctive relief is necessary and warranted here.

7

### 3.        The Balance of Hardships Tips Sharply in Plaintiff's Favor

The balance of hardships decisively favors the Estate.  Plaintiff faces substantial and irreparable harm to its valuable trademarks and Mr. Mancuso's cultural legacy if Defendants continue their unauthorized use of the Marks.  Conversely, Defendants have no legitimate right or entitlement to use the Estate's trademarks, and any inconvenience from ceasing their infringing activity is minimal.  Defendants remain free to promote a dance-related event under a non-infringing name that does not free-ride on Mr. Mancuso's valuable legacy or goodwill, thus facing little to no hardship from an injunction.  Accordingly, the balance of equities strongly favors granting preliminary injunctive relief.  *See Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 414 (S.D.N.Y. 2011) (balance of hardships favored owner of mark whose rights had been infringed).

### 4.        Granting the Injunction Serves the Public Interest

An injunction clearly serves the public interest by preventing consumer confusion and deception, preserving accurate and reliable source identification in the marketplace.  Protecting trademark rights benefits not only the rights holder, but also the public, which has a strong interest in clear and truthful communication about sponsorship, affiliation, and endorsement. Allowing Defendants to continue their unauthorized use of the Estate's trademarks would undermine public trust and compromise the integrity of Mr. Mancuso's carefully built legacy. Therefore, the public interest strongly supports granting the preliminary injunction.  *See NYC Triathlon, LLC*, 704 F. Supp. 2d at 344-45.

### B.        <u>The Court Should Preliminarily Enjoin Defendants from Selling, Transferring, or Using the Estate's Sound Equipment and Related Tangible Assets</u>

In addition to trademark infringement, Plaintiff seeks a preliminary injunction preventing Defendants from selling, transferring, encumbering, damaging, or otherwise using the Estate's

8

tangible property, specifically, the custom audio equipment personally acquired and curated by Mr. Mancuso during his lifetime.  To obtain preliminary injunctive relief on its conversion claim, Plaintiff must demonstrate: (1) likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) a balance of hardships tipping decidedly in Plaintiff's favor; and (4) that granting the injunction serves the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1. Plaintiff is Likely to Succeed on the Merits of its Conversion Claim

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837 (2006), and *certified question answered*, 8 N.Y.3d 283 (2007).  Plaintiff easily satisfies this standard.

Here, Defendants have intentionally retained possession of, and exerted unauthorized control over, the Estate's valuable custom sound equipment following express revocation of their temporary license.  *See* Horstman Decl. ¶¶ 4, 7-8.  The Estate has repeatedly demanded the return of its unique assets, yet Defendants continue to assert unauthorized dominion over them, thus interfering with the Estate's rights.  *See id.* ¶¶ 7-8.  Such facts strongly support Plaintiff's likelihood of prevailing on its conversion claim.

### 2. Plaintiff Faces Immediate and Irreparable Harm Without Injunctive Relief

Unlike trademark infringement claims, conversion claims do not benefit from a presumption of irreparable harm.  Nonetheless, irreparable harm is readily established when unique or irreplaceable property is at risk.  *See Quantum Corp. Funding, Ltd. v. Assist You Home*

9

*Health Care Servs. of Va.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("The purpose of a preliminary injunction is to prevent irreparable injury and preserve the court's power to render a meaningful decision after a trial on the merits."); *see also, e.g.*, *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) (affirming injunction; loss of unique family-run dealership would not be compensable by money damages); *Kozar v. Christie's, Inc.,* 31 Misc. 3d 1228(A), 929 N.Y.S.2d 200 (Sup. Ct. Westchester Cnty. 2011) (granting preliminary injunction prohibiting defendants from selling, transferring, or otherwise disposing of unique and irreplaceable painting pending resolution of ownership dispute).

The Estate's custom audio equipment constitutes unique, irreplaceable cultural artifacts central to Mr. Mancuso's historical legacy.  *See* Horstman Decl. ¶¶ 3-4, 8, 16.  Defendants' unauthorized use and possession of this fragile, historically significant equipment poses substantial and immediate risks of permanent loss or irreparable damage.  Such harm could never be fully remedied through monetary compensation, making injunctive relief urgently necessary to preserve the Estate's property and ensure meaningful final adjudication.

### 3.    The Balance of Hardships Favors Plaintiff

A preliminary injunction restraining Defendants from selling, transferring, or using the Estate's sound equipment properly preserves the status quo pending litigation.  Defendants have no legitimate ownership interest in these assets, as their original permission to use the equipment was explicitly revocable, and has since been revoked.  *See* Horstman Decl. ¶¶ 4, 7-8.  Any inconvenience Defendants may experience from discontinuing their unauthorized use of Estate property is minimal and significantly outweighed by Plaintiff's compelling interest in preventing irreversible harm to unique and historically important assets.  Accordingly, the balance of hardships overwhelmingly favors the Estate.

10

20850308.5

### 4.    Granting the Injunction Serves the Public Interest

Granting injunctive relief to preserve unique, culturally significant property and uphold lawful property rights strongly serves the public interest.  The public benefits from clear judicial protection of legitimate property interests and historical legacies, as well as from preventing wrongful possession or damage to property pending resolution on the merits.  *See Quantum Corp. Funding, Ltd.*, 144 F. Supp. 2d at 248 (granting preliminary injunction serves public interest by clearly protecting property rights and ensuring meaningful final adjudication).  Here, granting an injunction ensures that Mr. Mancuso's culturally and historically significant property remains intact, safeguarding the integrity of the judicial process and the Estate's rights.

*    *    *

Accordingly, the Estate respectfully requests that the Court preliminarily enjoin Defendants from selling, transferring, encumbering, damaging, or otherwise using the Estate's custom sound equipment and related tangible assets pending final determination on the merits.

### C.    <u>Plaintiff Should Not Be Required to Post a Bond</u>

Under Federal Rule of Civil Procedure 65(c), the Court has broad discretion to waive the bond requirement.  *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (citations omitted).  Courts in this district routinely waive bond requirements where, as here, Plaintiff seeks solely to enforce clear and well-established trademark rights, and Defendants have no legitimate claim to those rights.  *See, e.g.*, *New York City Triathlon, LLC*, 704 F. Supp. 2d at 345 (declining to require the posting of a bond where "Defendant ha[d] not demonstrated it w[ould] likely suffer any harm absent the posting of a bond, and the likelihood of success on the merits is overwhelming").  Accordingly, Plaintiff respectfully requests that the Court waive the bond requirement in this case.

11

20850308.5

## **CONCLUSION**

For the foregoing reasons, the Estate respectfully requests that the Court grant its motion for a preliminary injunction, and enjoin Defendants, their affiliates, agents, and all those acting in concert with them from using the trademarks LOVE SAVES THE DAY and THE LOFT, or any confusingly similar marks, including in connection with the unauthorized event scheduled for July 19, 2025, and restrain such parties from making any use of or otherwise disposing or impairing the Estate's physical property, pending a final resolution of this litigation.

DATED:  New York, New York
           July 3, 2025

MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Eleanor M. Lackman
    Eleanor M. Lackman (eml@msk.com)
    Samantha W. Frankel (swf@msk.com)
    437 Madison Ave., 25th Floor
    New York, New York 10022-7001
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    *Attorneys for Plaintiff Estate of David*
    *Mancuso, by its Administrator Richard D.*
    *Horstman II*

20850308.5

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION</u>

Pursuant to Rule 7.1(c) of the Local Rules of the United States District Court for the

Southern District of New York, the undersigned counsel hereby certifies that the foregoing

Memorandum of Law contains 3,329 words, excluding the caption, table of contents, table of

authorities, signature blocks, and this certification.  This word count was calculated by the word-

processing software used to prepare the document.

DATED:  New York, New York        MITCHELL SILBERBERG & KNUPP LLP
       July 3, 2025

By: /s/ Eleanor M. Lackman
    Eleanor M. Lackman (eml@msk.com)
    Samantha W. Frankel (swf@msk.com)
    437 Madison Ave., 25th Floor
    New York, New York 10022-7001
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    *Attorneys for Plaintiff Estate of David*
    *Mancuso, by its Administrator Richard D.*
    *Horstman II*

20850308.5