UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ESTATE OF DAVID MANCUSO, by and through its duly appointed Administrator, RICHARD D. HORSTMAN II,

          Plaintiff,

   v.

THE LOFT PARTY NYC, LLC, a New York limited liability company, and DOUGLAS SHERMAN, an individual,

          Defendants.

CASE NO. 1:25-cv-05537

**DECLARATION OF RICHARD D. HORSTMAN II IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

I, RICHARD D. HORSTMAN II, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Administrator of the Estate of David Mancuso (the "Estate"). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto. I submit this Declaration in support of Plaintiff's Motion for Preliminary Injunction.

2. David Mancuso was my uncle. He passed away without a will on November 14, 2016. On April 1, 2024, the Surrogate's Court of New York County issued Letters of Administration formally appointing me as Administrator of his Estate. These Letters grant me full and unrestricted authority to administer all of my uncle's assets and affairs. True and accurate copies of the Surrogate's Court Decree and Letters of Administration appointing me as Administrator are attached hereto as **Exhibit 1**.

3. My uncle founded and operated the renowned "Loft" parties starting in 1970. His first event, held on February 14, 1970, was called "Love Saves the Day." Since then, the trademarks LOVE SAVES THE DAY and THE LOFT have become widely recognized,

synonymous with my uncle's pioneering approach to music, sound quality, and community-focused events. These trademarks have been prominently featured in numerous articles and retrospectives published by prestigious outlets including NPR and The New York Times, consistently acknowledged for their historical significance, cultural impact, and ongoing influence. Additionally, the Estate has continuously used these trademarks in connection with branded merchandise, such as hats and t-shirts, which further demonstrate our ongoing commercial use and the public's recognition of these marks. True and accurate photographs of representative merchandise are attached hereto as **Exhibit 2**. My uncle's "The Loft" parties were not merely local events; they transformed New York City's nightlife, directly inspired celebrated clubs worldwide, and established the blueprint for modern dance-music culture. Integral to these legendary gatherings was the custom, audiophile-quality sound equipment personally acquired, curated, and carefully maintained by my uncle. This equipment is not merely valuable—it is truly unique, irreplaceable, and closely tied to my uncle's lasting historical and cultural legacy. Together, these Marks and physical assets represent more than fifty years of careful cultivation, global recognition, immense goodwill, and enduring historical influence, making them extremely valuable assets of my uncle's Estate.

4.      Following my uncle's death, and prior to my formal appointment, certain individuals—including Defendant Douglas Sherman—continued organizing events under the Loft name under license, with the Estate's revocable permission. This permission included use of the Estate's trademarks LOVE SAVES THE DAY and THE LOFT, and the Estate-owned sound system and related equipment. At all relevant times, these individuals understood and acknowledged their authorization was solely at the Estate's discretion.

2

5.      In January 2019, certain individuals formally created an entity called "The Loft Party, LLC."  This action was done openly and with the Estate's knowledge and consent at that time.

6.      On September 19, 2022, without informing the Estate or obtaining the Estate's consent, Defendant Douglas Sherman and certain others secretly formed a competing entity, "The Loft Party NYC LLC."  On the same day they formed this competing entity, and continuing into the following day, these individuals secretly withdrew substantial funds from the original Loft Party bank account.  Specifically, Defendants withdrew a total of approximately $17,770 from this account between September 19 and 20, 2022.

7.      These withdrawals were undertaken entirely without the Estate's knowledge, consent, or authorization.  Immediately upon discovering this misconduct shortly thereafter, the Estate promptly and explicitly revoked all permissions previously granted to these individuals and to the newly formed competing entity, including use of the Estate's trademarks, names, and other intellectual property.

8.      Instead of complying with the Estate's revocation, Defendants immediately and defiantly refused to cease using the Estate's trademarks and retained possession of David Mancuso's invaluable sound system and personal belongings, despite explicit demands from the Estate for their return.  To date, they continue to refuse to return this property, asserting a baseless right to control Estate assets they were only permitted to use under a revocable license. Given the age, fragility, custom nature, and historical importance of my uncle's audio equipment, Defendants' ongoing unauthorized use and possession poses a substantial risk of permanent loss, irreparable damage, or destruction.  Such harm would be immeasurable and could never be fully remedied through monetary compensation alone.

9.      The Estate promptly acted to address this unauthorized conduct.  On October 18, 2022, the Estate sent Defendants a formal cease-and-desist letter demanding they immediately cease all unauthorized use of the Estate's trademarks and other intellectual property.  A true and correct copy of this October 18, 2022 letter is attached hereto as **Exhibit 3**.

10.     On October 24, 2022, then-counsel for Defendants responded explicitly refusing our demands and wrongly asserting lawful authority to continue exploiting the Estate's trademarks.

11.     Recently, Defendants significantly escalated their infringement.  They are actively promoting a major public event entitled "Love Saves the Day: Tribute to David Mancuso," scheduled for July 19, 2025, at Brooklyn Bridge Park.  In promotional materials for this event, Defendants explicitly and falsely claim that it is being held "in collaboration with the team behind David Mancuso's Loft Party," creating the deliberately misleading impression that this event is affiliated with, endorsed by, or sponsored by the Estate.  A true and accurate copy of these promotional materials is attached hereto as **Exhibit 4**.  I personally reviewed these promotional materials, which were publicly available online and brought to my attention by third parties familiar with the Estate's activities.

12.     On June 12, 2025, the Estate again sent Defendants a cease-and-desist letter, specifically addressing their continued unauthorized use of the Estate's trademarks in connection with their July 19, 2025 event.  Defendants have ignored this demand and continue actively promoting the event.  A true and accurate copy of the Estate's June 12, 2025 cease-and-desist letter is attached hereto as **Exhibit 5**.

13.     Defendants' ongoing infringement and deliberate misconduct causes immediate and irreparable harm to the Estate's trademarks, goodwill, and my uncle's legacy.  Defendants'

actions confuse the public and improperly exploit trademarks my uncle carefully cultivated over decades, misleading consumers into believing their unauthorized activities are officially endorsed or sponsored by the Estate.

14.     Immediate judicial intervention is necessary to prevent further consumer confusion, irreparable harm, and damage to the Estate's trademarks and goodwill.

15.     Accordingly, on behalf of the Estate, I respectfully request that this Court grant the Estate's motion and issue a preliminary injunction immediately prohibiting Defendants from any further unauthorized use of the trademarks LOVE SAVES THE DAY and THE LOFT, or any confusingly similar marks, including in connection with Defendants' July 19, 2025 event and any future activities, pending resolution of this litigation.

16.     Without immediate judicial intervention, Defendants' ongoing unauthorized use, transfer, or disposal of this unique equipment will irreparably damage the Estate's property interests and permanently impair the Estate's ability to recover these invaluable cultural assets intact.  Monetary damages would be inadequate compensation due to the equipment's custom, historical, and cultural value tied uniquely to my uncle's legacy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of July, 2025 in Utica, New York.

Administrator, Estate of David Mancuso

5